Case number 13-1463. Reginald Williams v. Katherine Bauman. Argument not to exceed 15 minutes per side. Ms. Paget? Paget. Close enough. May I proceed for the appellant? Good morning. My name is Christine Paget on behalf of the appellant, Reginald Williams. I'm going to focus today on the first issue raised in the brief. The State Court here unreasonably applied U.S. Supreme Court precedent when it held that the admission of the two preliminary examinations by Mr. Banks, one in the co-defendant's case and one in Mr. Williams' case, the admission of those at trial after Mr. Banks passed away did not violate the comprehensive clause. I don't think there's any dispute, or can be no dispute, that the preliminary examination testimony was testimonial. The question then turns to the second point, whether or not there was an adequate opportunity to cross-examine. Certainly with respect to Mr. Coleman's preliminary exam, Mr. Williams was not present. I'm not even certain he had been arrested at that point in time. And his counsel was not there. He had no reasonable or adequate opportunity to cross-examine there. Nor did he have the transcript of that proceeding at the time of his preliminary examination. And that part was also – as a result, he did not have a reasonable or adequate opportunity to cross-examine Mr. Banks at that proceeding. Well, you're talking about his own proceeding? His own proceeding. And he has a constitutional right to get a transcript of a prior preliminary examination? Where does that come from? Well, what he does have is a constitutional right to an adequate cross-examination of the witness. And because Mr. Banks passed away before the trial, he also asked for the opportunity to get that transcript so he could cross-examine Mr. Banks about it. Does he have a right? He has a right to an adequate opportunity to cross-examine. Okay, but where's the right to have a transcript of a prior testimony in a different case? Where does that come from? It's part of the opportunity to reasonably cross-examine the witness. Do you have authority that that's clearly established federal law, that he has a federal constitutional right to a transcript of a prior proceeding so he could, I guess, to impeach for background or whatever the heck it is? Well, in this instance, it would have been impeachment because – Yeah. And so to – the precise way that you're defining the right, there is no case that says that, but I would point the court to it. Doesn't it almost have to be? Well, actually, I was going to point the court to White v. Woodall, which is a U.S. Supreme Court case from April, 134 Supreme Court, 1697, where Justice Scalia makes a point and cites back to an earlier case where they point out that you don't need to have precise facts, but what you do need to have to have clearly established Supreme Court precedent is the general principle. And there's no question that the general principle that you have an adequate right to cross-examination is clearly established through case law going back to 1880s. But there was an opportunity for some cross-examination in this case. That's the problem. Some cross-examination – sorry. You're stuck with whether that's a reasonable interpretation of – reasonable application of that principle. Right. It's a position, certainly, that it was an unreasonable application of the existing precedent. And I think part of the problem in this case has been the way that the court has looked at it. It's sort of separating out was it – the purpose for a preliminary examination, which is certainly different than the purpose of the case, and that you have – at the point of preliminary examination, what you're talking about is whether or not probable cause has been established. And then saying because there's this more limited applicability of the right or availability at preliminary examination that you can then somehow say because you have a more limited purpose that the preliminary examination is an adequate opportunity to cross-examine in trial. And that's the argument that the State Supreme Court versus State Court of Appeals was using in an argument that the Attorney General's Office on behalf of the state has been making here. But to some extent, it proves the point that you've got a more – that in this particular instance, if you take a look at what an adequate opportunity was, identification was critical here. And Mr. Banks was the only person who identified Mr. Williams as being the shooter in this case. And his attorney explicitly requested at the preliminary examination the opportunity to get the testimony of this witness from the exam of the previous – that had already been held so that he could cross-examine the witness. The prosecutor – the witness – or as you say, the preliminary exam had already been delayed because of a witness's ill health. The prosecutor pointed out the witness's health problems and said, you'll have an opportunity to cross-examine about this at trial. And on that basis, the court went forward. And I think it's that part of the ruling that really shows you why this is not an adequate opportunity here. It was certainly something the State and the court was well aware of at the time. But Mr. Williams' counsel at the time of the preliminary examination knew that Mr. Banks was the bad guy. And that's why he asked – So he knew that this was a possibility that the preliminary exam may be introduced at trial. Correct. And that's why he asked to have the transcript from the other proceedings so that he could cross-examine Mr. Banks about that. And he was denied that request. Are there material differences in the two preliminary examinations of Mr. Banks? And if so, what are they? In particular, Mr. Banks said at Mr. Coleman's preliminary examination that he'd be able to identify the shooter if he was wearing the same clothing. The following day, Mr. Williams was in a lineup wearing the dark shirt that Mr. Banks mistakenly said the shooter was wearing. The video and the testimony is that the person actually in the lighter-colored shirt was the person who shot the story. So – and then at his own preliminary examination, Mr. Banks said, oh, no, no, I could totally identify him from his face. It had nothing to do with his clothing. So he was not able to cross-examine him with respect to those differences in the testimony. And – I'm sorry. Well, there are some cases in this court that talk about preliminary examinations might be a somewhat limited time and profit might be implicated. But that isn't what happened here, is it? There was a full cross-examination at the second preliminary examination. No, it was not because he did not have the opportunity. He had the opportunity. He had the opportunity. He had the full scope of the question. An opportunity, but it needs to be an adequate opportunity. The Supreme Court cases talk about it being an adequate opportunity and that if you look at the circumstances here – It wasn't cut off. It wasn't cut off. Well, it wasn't – well, sure, it wasn't cut off, but it was cut off in the sense that he didn't have the material he needed in order to fully cross-examine him. So, sure, you could cross-examine him all you want about his testimony from the previous hearing, but you don't know what that testimony is. He didn't definitely know that. Well – And what were the inconsistencies? As I just pointed out to Judge Griffin, the inconsistencies were with respect to the witness. He said that he – at the original proceeding, he said that he could identify the shooter if he were wearing the same clothing. He then saw – and he said mistakenly that the shooter was wearing a darker shirt. And you were able to use that at trial? Well, not fully because Mr. Banks wasn't there, so he could not be cross-examined about that. No, but, I mean, it's better than that. You already have – it's locked in that there's a discrepancy. Well – I thought it was the way it was used. Well, the discrepancy, of course, would be locked in even with just the transcript, but you're not able to cross-examine the witness about it. Maybe he would have said something different. We don't know if he had been confronted with that, if he would have said something differently, if he would have said something different. What did you say about the – there's also a state court ruling on it being harmless in any event, and so that also gets at – Sure. And so – and there was an awful lot of evidence. Well, I would – Are you going to disagree with that last point? I am going to dispute that last point, and if I could be allowed to do so. Absolutely. The – and then go over some of the briefs. But what – the evidence against Mr. Williams being present there is the identification of Mr. Banks. You have a video that, as the prosecutor described it, you can't see who the person is who's shooting. All you can see is the shape of his head. So the prosecutors are going, you know, the shape of his head is similar, which is not a lot of evidence. The other eyewitness who was alive said, I can't identify the shooter, but I think he was the lighter skinned of the two men. And of the defendants in this case, the lighter skinned man was not Mr. Williams. With respect to the DNA evidence that is referenced, those are – that's clothing that was found days later in a mixture and not – the beige shirt that the shooter was wearing did not have – was not matched to Mr. Williams. You have a pair of jeans that multiple people wore. You have a hat that multiple people wore. But what you also have is Mr. Coleman's mother testifying that, you know, she didn't really like Mr. Williams, but when she – when her son came home bleeding from having been shot shortly after the murder, Mr. – he was with somebody who looked like Mr. Williams but was not him. So in terms of a lot of evidence, the crux of this case and the crux against Mr. Williams was identification. That's what the prosecutor argued at the time, and that is what has been – that, you know, we have certainly maintained all along. And with respect to the identification, what you have is Mr. Davis. So I would not – I would say if you look at it under Brackett and Van Arsdell and those factors, you can't get to the determination that it's harmless what is unreasonable. So back to Judge Griffin's first question, your best case on points of the court case is Crawford itself. Crawford and the cases that Crawford cites with respect to the right to an adequate – to an adequate opportunity for us to examine. So I would point to Crawford, to Barker, and to Warner v. Texas. Is there a court of appeals case – I realize that's not a benchmark, but is there a court of appeals case that says, oh, okay, adequacy when there's been a prior – when an exam requires a production of transcript before the second exam? Not that I'm aware of, but I certainly wasn't also looking for – I was looking for them previously, but given the requirement that the U.S. Supreme Court cases be filed, I was not looking for them before this argument. I'm happy to do so, but I'm unaware of any. No, I just pointed out it's a Supreme Court case, so that's the problem, but I was just curious if you had any traction even without the standard tributary. Yeah, not that I'm aware of, but it doesn't mean that I – yeah. Could I just bring up – you might move the microphone back a little bit, only because I don't know if you're hearing this clicking from the speaker. I am. Yeah, and I don't know whether it's that microphone being so close. Thank you. Good morning. May I please the court? Bruce Edwards, Michigan Assistant Attorney General, appearing on behalf of the board. The timeline in this case is very important. The murder is October 5. The co-defendant is then arrested. The co-defendant's preliminary examination is October 19. Mr. Williams is arrested the next day, October 20, and then his preliminary examination is November 8. So the first thing that that shows us is that the defendant was not in custody at the time of the preliminary examination of the co-defendant. Why is that? That's very important because Mr. Banks never identified Mr. Williams as the shooter at Mr. Coleman's preliminary examination. And that shows that the Coleman preliminary examination didn't really add hardly anything to this case. Well, why was it introduced? Because it was a joint trial with two different juries. And so unless somebody objected, they just read the one and they read the other, and neither attorney objected. That's the answer to my question. But there was some testimony in the earlier preliminary examination. Yes, the Coleman preliminary examination. Here's the point I'm getting at when I said why does that matter. The why does it matter to me turns on, okay, fine. That just proves he had no reason to be involved in such a preliminary examination. I don't know why that's an answer to the question why they couldn't get a transcript before the second preliminary examination. Okay, well, that's sort of a different question I wasn't focusing on. They had already declared that your point leads to that. Well, let me answer. The preliminary examination of Mr. Williams had already been adjourned once. And then they finally got Mr. Banks in there who was in ill health. And then the attorney says, well, I would like an adjournment so I can get the transcript from the earlier preliminary exam. And the judge is like, well, it's not been prepared yet. This gentleman's in ill health. We've already got an adjournment. So we're going to go forward, and we'll see what happens. And that's very reasonable, as Judge Griffin pointed out. There's no Supreme Court case that says you're entitled to a transcript of an earlier hearing where a witness has testified. So that's my answer to that. There's no policy. There's no prosecutorial policy against it. Oh, certainly not. But it wasn't constitutionally required. So why not just say, okay, fine, we don't want to have another adjournment. Let's do it now. We'll produce the transcript as soon as it's done. If you want to have another preliminary exam, you can. That certainly is something that was an option that was before the judge. Did anyone ask for that? No, it wasn't requested, and it wasn't constitutionally required. And that's the only test that applies now. Now, as per the admission of Banks' testimony from Williams' own preliminary examination, the Al Timoney v. Jackson case, and Judge Sutton, you were on that panel, this court specifically said there's no U.S. Supreme Court case that requires or would forbid admitting a preliminary examination from the very same defendant's earlier hearing. So the question about admitting the preliminary exam from Williams' own preliminary exam is just not an issue here. The bigger issue is was it proper to admit the Coleman preliminary examination testimony because the defendant had not been arrested yet, and obviously he did not have an attorney that was there. Well, it's more than just proper. The question is whether it's a plate error. I would agree with that. It's even a higher standard. Okay. I don't even have a problem with that. I'd put deference, plus we've got a plate error of deference, and we've got a double deference error. Right, and if, in fact, there had not been a preliminary exam for Mr. Williams, for example, if he had waived a preliminary exam, I would concede a proper error in a heartbeat because there was no opportunity to cross-examine a preliminary examination of Coleman, the co-defendant. But this is a very unique situation where you have the same witness being cross-examined in two virtually identical proceedings involving the same event. That's kind of unusual. This is not too far off from let's say there had been a joint preliminary examination for both defendants, and after Mr. Banks had finished being cross-examined by Coleman's attorney, he gets ill. They take a break. They have to adjourn for two weeks. They come back two weeks later and finish, and the attorney for Mr. Williams then gets to cross-examine him. That would all be a part of the same hearing, so that's not an identical parallel that I'm drawing, but it's sufficiently enough to make me believe that the Supreme Court has never really faced a situation like this, and because of that, we can't say that the Court of Appeals' handling of this resolution was objectively unreasonable. But as the Michigan Court of Appeals and the district court— Your timeline point at the beginning, so the question is adequate. I think the force of your timeline point is where no one could have done anything. That was what you were getting at. I'm just wondering if that cuts the other way. Why isn't that proved? Of course it's inadequate. There was no possibility of the attorney being there. Right. Well, if there hadn't been a second preliminary examination, I would agree immediately. But the second preliminary examination— But I mean, there is a— I mean, unless all of this goes down the road of harmlessness— Well, I was moving there. Okay. It seems to me the fact that both are admitted is highly relevant to harmlessness. Absolutely. I'm not sure why your timeline helps you on the adequacy point. It actually seems to me the rule is prior adequate opportunity to do this. And how is it adequate if you've just established by the timeline? Well, once again, if there had not been the second preliminary examination, there would not be at all. But because the very same witness is being asked about the very same event, that's the point I'm trying to get at. But let me move on to the harmless error because that's what the district court focused on, and I think it's clear that it was harmless error here. Now, under the Van Arsdale factors, the first factor I believe you're supposed to look at is how important was the allegedly improperly admitted evidence. And in this case—and this ties back to how I started out— the transcript from the Pullman preliminary examination was not important to the state's case at all because the witness, Mr. Banks, never identified who the shooter was. He just said two black males came in. One of them came forward, had a gun, said this is a robbery, and then there was the other fellow pulled out his own gun apparently, and they shot at each other and they left. So we don't know who either person was. But he also, with Banks in the first preliminary exam, said something about dark clothing, right? He did. That's right. It turns out that the video apparently shows that the guy did not have a dark shirt, and Mr. Banks thought that he did have a dark shirt. That's how he read the transcripts. But he said he gave an approximate height, young black male, 17 to 20 years old, 5'7". So he gave a pretty decent description, and he said the guy looked at me, I looked at him, I think I could recognize him if I saw him again. But he didn't ever say who the person was because the person wasn't in the courtroom, hadn't even been arrested. So the Pullman preliminary exam didn't add hardly anything to the state's case. But in fact, it actually hurt the state's case a little bit because, as defense counsel pointed out, he said, well, I think I could identify him if he was dressed the same way. And defense counsel used that to his benefit in showing and arguing the latter testimony at Williams' own preliminary examination where he said, well, I recognize him from his face, was impeached by the fact that he had said previously I could recognize him if he was dressed the same way. So that's the first point. Pullman's preliminary examination testimony is not important to the state's case here. What was important was the Williams' preliminary examination where he said that man right there was the shooter. Now, that is totally different than what happened at the Pullman preliminary examination. Now, in Brown v. United States, 411, United States, at page 231, the court said a brutal error can be harmless if it is cumulative to properly admitted evidence. And my argument is that the Pullman preliminary examination is cumulative to the properly admitted Williams' preliminary examination testimony to the extent that they were consistent. It's cumulative and, therefore, it would be a harmless error. Now, okay, also as to harmlessness, of course, you have unique – I'm just trying to figure out how this works. Does your argument come to this that, well, if it says the same thing, it's obviously harmless because what's the big deal? It would be cumulative. Okay. And then if there's a difference, you win there too. It's harmless because then you say, oh, the defendant gets to point out the discrepancies. Absolutely. That's exactly correct. It's not as important as I've been telling you. No, no. But it is true that if it's cumulative – Every court has done harmless things, you always win. Well – Because you're saying – I'm just saying – That's just an unfortunate – If they're the same, it's cumulative, you always win. Every single difference, you call an opportunity for the defendant. And the defendant uses the opportunity. Well, there's really more than two categories, though, aren't there? The district court found this was careful. It found this harmless. We can think of a lot of situations where this might not have been harmless, but in this case, your position is nothing happened in a negative way to the defendant. That's correct. And also as to harmlessness, of course, there is the compelling DNA of this. You have blue jeans and a baseball cap that have Williams' DNA on it. You have a shirt with gunshot residue and the co-defendant's blood on it. These items are all found together. And with reference to Coleman's mother, she testified that Mr. Coleman was good friends with Mr. Williams. They hung out together quite a bit. And when her son hung out with him, he had a lot of money, even though he had no job. And she didn't really like that. So, you know, that's pretty strong circumstantial evidence that these two gentlemen were together when this crime was committed. And there is also the videotape. And the prosecutor said he can't see the face for sure, but he can see the shape of the face. And it is, you know, it matches Mr. Williams. I think there's a technical question I believe, which is something you found on the other side that you raised, but I just want to make sure I understand your position. On the COA, do we have the ineffective assistance claim in front of us or just one of them in front of us? I think you do because the issue was it was improperly admitted in the alternative. Counsel was ineffective. So I think that was included within the COA. But just the ineffectiveness of not complaining about objective trial testimony, not as to not getting expert witness. Oh, that part, that's not it. So the other ineffective assistance claim is in front of us. Okay. Now let me move on briefly to the ineffective assistance claim. There was no valid objection to the admission of Williams' own preliminary examination test. You found on the other side that she was going to rest on her knees for this claim. Are you arguing because you – Because I think I have three or four good points I would like to bring forward. Go for it. All right. First off, the Michigan Court of Appeals reviewed this issue not for plain error but on the merits. So the lack of an objection had no impact at all on the Michigan Court of Appeals' review of the issue. I think that's an important point, and the Sixth Circuit made that very point in a case called Jeffrey Kitka about a year and a half ago. Also, clearly, it's a reasonable strategy not to object to the Coleman preliminary examination testimony when it adds little to the prosecutor's case and allows you to criticize and impeach the testimony of the properly admitted Williams preliminary examination where he says, I identified him as the shooter based on his face, not on what he was wearing. In fact, if counsel had objected and successfully kept out Coleman's preliminary examination, there's a chance that an argument would be that counsel was ineffective for trying to keep it out because he should have let it in because it was his only hope of impeaching what Mr. Banks had said at Williams' own. Well, shouldn't defense counsel have tried to have it admitted for the limited purpose of impeachment as opposed to all purposes? That certainly would have been an option. No, that's what should have happened. I mean, he wanted the testimony, but for impeachment purposes. Instead, by not objecting at all, it came in for all purposes, including proving the crime. But the only evidence that it proved was his two black nails. I know, but you're just talking about, well, it was fine strategy. I don't think it is fine strategy. I think it should have. I think there was little to be gained except for impeachment purposes. I'm sorry, did the question you tried to answer help? I mean, am I wrong? What? Well, I just think that counsel has to ask himself, what do I benefit by an objection? It may not have occurred to him to say, well, I want a limited objection. Okay. I mean, a good defense counsel would think of that, wouldn't he? Wouldn't they? He might. But is it constitutionally required to do so? Okay. Now, the last issue, of course, is the identification and suppressing. And in this case, New Hampshire v. Perry says you can't ever suppress an identification unless you first find police misconduct in the identification procedure. And there's no evidence of any police misconduct. The fact that he happened to have a dark shirt on, the police officer who set up the lineup testified, he didn't even know that Mr. Banks had testified the day before that he thought the shooter had a dark shirt on. And they allowed him to stand where he wanted to stand. There was actually an attorney there to help make sure that it was safe. And then, of course, there's the independent reliability. He said the shooter looked at me. I looked at him. However, briefly, I was within 25 feet of him. He picked him out right away, and then he did testify. I picked him out because of his face, not because of his shirt. So I would ask the court to find that there was the Michigan Court of Appeals was not objectively reasonable, and even if a Crawford error occurred, it was harmless, and I request that you would affirm the district court's denial of habeas verdict. Thank you. Thank you, Mr. Stavridis. Ms. Stavridis, do you have a patent? It's a paycheck. Paycheck, sorry. No, you know, you are not the first person ever to mispronounce it. Maybe the second. I just have a couple of brief rebuttal points. First, with respect to Altina, which the panel is familiar with, the distinction I would make is the same that was made in the brief, which is the adequate opportunity for cross-examination. I think the further counsel keeps glossing over that adequate part of the opportunity. It's not just an opportunity to cross-examination. It's an adequate opportunity to cross-examination, and the point being that there was no opportunity for Mr. Williams' counsel to cross-examine the witness with respect to the Coleman preliminary examination testimony, where the witness said, I could recognize him if he was wearing the same shirt. When he was asked if he got a pretty good look at him, he said, I think I could identify him if he was wearing the same clothes. So he sees him the next day in a dark-colored shirt, which certainly— Okay, that would be the most effective way to cross-examine him. But the Williams defense counsel certainly can talk to the co-defense defense counsel, and even though there's not a transcript saying, well, what did Meg say, and do you have any notes and this and that, and, I mean, compare notes between defense counsel, the most effective way would be to have a transcript. But absent a transcript, I mean, there are other ways to find out what his testimony is, right? There certainly are other ways. That would be the easiest way is just talk to the counsel for the co-defendant. But, you know, as we all know, one, memories aren't perfect. I know, but you want the most effective way to cross-examine, not maybe the constitutional adequacy. The standard is adequacy. You want the most effective way. Well, you know, with respect to adequacy, and I think it gets to the you are not going to be able, if you're just going from your co-defendant's counsel's memory, your ability to impeach the witness with respect to that. If he says, I didn't say that, or I don't remember saying that, your ability to adequately cross-examine him with that is going to be limited. And if I could, if that addresses your point, just move on to, I wanted to point the court to a couple of pieces of testimony that I think reflect a few of the points that counsel is making. And they're with respect to the identification and the homelessness point. The first is that the DNA evidence with respect to the beige-colored shirt, there was no DNA evidence tying that shirt that was in that backpack to Mr. Williams, and the page ID for that is 523 to 525. And the second point, which I made in the original argument, is that while you could draw the inference, I suppose, that Mr. Williams was with Coleman, his mother testified that he was not with him, and that it was somebody who was drugging him. And that's 325 to 326. All right. Thanks to both of you for helpful arguments. And, Rhys, we appreciate it. Thank you.